THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FEDERAL TRADE COMMISSION          *

       Plaintiff          *

      vs.          *          CIVIL ACTION NO. MJG-11-1483

MANUEL AND LOLA ALBAN          *
      et al.
                                  *
       Defendants
\*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM AND ORDER RE: INJUNCTIVE RELIEF

The Court issues this Memorandum and Order as its statement of reasons in support of the injunctive relief provided hereby against Defendants Manuel Alban and Lola Alban ("the Albans") and Loma International Business Group, Inc. ("Loma")[1] in compliance with Rule 65(d) of the Federal Rules of Civil Procedure.

I.    BACKGROUND

In the Bench Trial Decision [Document 181], the Court found:

    1.    That Defendants Manuel Alban and Lola Alban and Loma International Business

---

[1] Plaintiff and Defendant Marco V. Alban have settled the claims against Marco V. Alban. Pursuant to the settlement, the Court issued the Stipulated Final Order for Permanent Injunction [against Marco V. Alban] [Document 202].

>              Group, Inc.[2] violated Section 5(a) of
>              the FTC Act, 15 U.S.C. § 45(a).
>
>         2.   That Defendants Manuel Alban and Lola
>              Alban and Loma International Business
>              Group, Inc. are jointly and severally
>              liable.
>
>         3.   That the Court shall grant injunctive
>              relief against Defendants Manuel Alban
>              and Lola Alban and Loma International
>              Business Group, Inc. pursuant to
>              Section 13(b) of the FTC Act, 15 U.S.C.
>              § 53(b).
>
>         4.   That the Court shall include within the
>              said injunctive relief, appropriate
>              monetary obligations.
>
>         5.   That further proceedings . . . are
>              necessary to address:
>
>              a.   The terms of the said injunctive
>                   relief, and
>
>              b.   Issues pertaining to the monetary
>                   obligations to be imposed.
>
> Id. at 1-2 (footnote number modified).

The Court has conducted further proceedings, including an evidentiary hearing, has considered the evidence presented at trial and the supplemental hearing and the arguments of counsel. The Court has made its factual findings based on its evaluation of the evidence and the reasonable inferences drawn therefrom.

---

[2]  But not Defendant Servicios LatinoAmericanos De Maryland, Inc.

II. DISCUSSION

The FTC presented a Proposed Final Judgment and Order for Monetary Relief Against Loma International Business Group, Inc., Manuel Alban, and Lola Alban (the "Proposed Order")[filed herewith as the Proposed Order] including:

- Introductory statement with findings
- Definitions
- An Order with eleven sections:
    I. Ban on Providing Immigration Services
    II. Prohibition Against Misrepresentations
    III. Monetary Judgment
    IV. Customer Information
    V. Monitorship Termination
    VI. Updating Customer Contact Information
    VII. Order Acknowledgments
    VIII. Compliance Reporting
    IX. Recordkeeping
    X. Compliance Monitoring
    XI. Retention of Jurisdiction

The Proposed Order was reviewed with counsel on the record of the supplemental hearing. The objections[3] asserted by the Albans are addressed herein as are certain modifications to the Proposed Order made by the Court in the Permanent Injunction issued herewith.

A. <u>Injunction Sections</u>

For reasons stated on the record of proceedings held, as supplemented herein:

- Introductory statement with findings: The section has been replaced with a Findings section containing a statement of jurisdiction and the violation found.

- Definitions: No change.

- I. Ban on Providing immigration Services: No changes.

- II. Prohibition Against Misrepresentations: Clarification of part II.A. that the reference therein is to the Defendants' education, etc.

- III. Monetary judgment: See Section B below.

- IV. Customer Information: Modified pursuant to discussion with counsel. Because the monitor took over all records, reference to customer information was modified to refer to any form that Defendants may now have in their possession.

- V. Monitorship Termination: Modified pursuant to discussion with counsel. The Monitor shall turn over records and information it has to the Commission rather

---

[3] The Albans presented an overall objection to the grant of any injunctive relief and retain the right to contend that no injunctive relief of any kind should be granted.

than destroy it.  The reference to payment of funds was removed.

- VI. Updating Customer Contact Information – removed pursuant to discussion and modifications of section V.

- VII. Order Acknowledgments – VII.B.: The Albans' request for a "carve out" of World Class Packaging is denied.

- VIII. Compliance Reporting - 15 years reduced to 10 years.

- IX. Recordkeeping - 15 years reduced to 10 years.

- X. Compliance Monitoring - Plaintiff shall communicate with the Albans through counsel if they have counsel.  There will be no provision regarding Plaintiff's interviews with employees or affiliated persons.  The Court will neither expand nor reduce the Plaintiff's rights in this regard.  There will be no provision regarding Plaintiff's ability to use lawful means or compulsory process.  The Court will neither expand nor reduce the Plaintiff's rights in this regard.

- XI.  Retention of Jurisdiction: Unchanged

B. <u>Monetary Section</u>

Starting in about 2001, the Albans[4] provided Spanish-speaking customers immigration services, which required qualifications that they lacked.  The services were provided in an office in which the Albans also provided tax return preparation and, for a time, court-related substance abuse counselling.  On June 1, 2011, the FTC filed the instant lawsuit and obtained a sealed Temporary Restraining Order [Document 13]

---

[4]     Inasmuch as Loma, the corporate defendant held liable, is no longer operating, has no assets, and was at all times operated by the Albans, the only Defendants discussed herein shall be the Albans.

5

authorizing a "raid" of the Albans' office, the seizure of documents and the services of a Temporary Monitor. The authorized "raid" was conducted and effectively closed the Albans' office, which also prevented the provision of services not at issue.

Ultimately, the Temporary Monitor, utilizing the services of a forensic investigator, estimated that the gross revenues obtained by the Albans from immigration services of the type at issue for the approximately ten-year period from April 2001 to June 2011 would have been in the range of $479,000 to $753,406. Memorandum of Decision [Document 183] at 21-22.

The Court found the estimate to provide a "reasonable approximation" of the gross revenues and, therefore, found as a fact that the pertinent gross revenues received by the Albans were within the estimated range. Id. at 23-24.

In the Memorandum of Decision, the Court stated:

> [T]he amount of disgorgement to be ordered does not necessarily equate to the revenue derived from the services.
>
> The Court, considering an equitable remedy, finds it appropriate to take into account the Defendants' current financial circumstances because disgorgement is designed to be remedial and not punitive. Moreover, it may be appropriate to consider

> the ultimate disposition[5] of any amount of
> disgorgement paid. Therefore, the Court
> finds a need to hear further evidence and
> argument regarding the amount of
> disgorgement to be required.

Id. at 24 (internal citations omitted, footnote number modified). Having heard such further evidence and arguments of counsel, the Court must now exercise its discretion to determine an appropriate amount of disgorgement to require from the Albans.

Courts are "clothed with large discretion" to create remedies to suit the circumstances of the case. FTC v. Whole Foods Mkt., Inc., 548 F.3d 1028, 1033 (D.C. Cir. 2008) (quoting Ford Motor Co. v. United States, 405 U.S. 562, 573 (1972)).[6] The decision to order disgorgement of ill-gotten gains, and the calculation of those gains, lie within the discretion of the trial court, which "must be given wide latitude in these matters." S.E.C. v. Patel, 61 F.3d 137, 140 (2d Cir. 1995).

In exercising its discretion in the instant case, the Court finds it appropriate to consider the Albans' present circumstances and future prospects. In this regard, the Albans are both well into their 70's, in less than perfect health and

---

[5] For example, how – if at all – amounts paid would be utilized to "repair" the damage caused by the Defendants through refunds to customers or otherwise.

[6] Although an anti-trust case, the equitable principles are relevant.

7

have no realistic prospect of any material future income-producing activity.  Moreover, their actual income received from the actions for which they are being sanctioned was not, realistically viewed, particularly great.  Using, for illustration, the middle of the range the Court found reasonable, the average per year over the period from 2001 to 2011 was less than $61,000.  Assuming a minimal estimate of $1,000 per month of the expenses (including office rent) incurred to generate the income, they netted – for the personal services of two people – less than $50,000 per year.

Of course, the starting point for consideration of a disgorgement order is gross receipts without reduction for expenses.  See <u>FTC v. Washington Data Resources, Inc.</u>, 704 F.3d 1323, 1327 (7th. Cir. 2013).[7]  However, in the circumstance of the instant case, net revenue is the start, not the end, of the discretionary determination of the amount of disgorgement that the Albans shall be required to pay.

---

[7] We agree with our sister circuits and today hold that the amount of net revenue (gross receipts minus refunds), rather than the amount of profit (net revenue minus expenses), is the correct measure of unjust gains under section 13(b). We echo the Second Circuit's sentiment that 'defendants in a disgorgement action are not entitled to deduct costs associated with committing their illegal acts.' Accordingly, the district court did not err when it considered Appellants' net revenues, instead of their profits, in its calculation for damages. <u>Id.</u> (citations omitted).

The instant case was filed pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), which authorizes the Court to issue a permanent injunction. The authority to grant the injunction includes the authority to grant ancillary relief. F.T.C. v. Ross, --- F.3d ----, 2014 WL 703739, *2 (4th Cir. Feb. 25, 2014). There is no specified limitations period. Hence, the FTC seeks, and the court could order – should it exercise its discretion to do so – disgorgement taking into account the Albans' gross receipts for the ten-year, two-month period, from April 2001 to the June 1, 2011 filing date.

However, it is appropriate to consider in connection with the exercise of discretion, that the FTC Act does specify a three-year limitations period when the FTC sues for monetary relief pursuant to Section 19(b), which permits "such relief as the court finds necessary to redress injury to consumers," including "the refund of money or return of property, [and] the payment of damages." 15 U.S.C. § 57b(b).

It is also pertinent for the Court to consider the fact that the Albans have already been required to pay, and have paid, in excess of $110,000 to finance the Temporary Monitor and an additional $6,500 to fund the Temporary Monitor's financial assistant.

Furthermore, in view of the non-punitive nature of the equitable monetary remedy, it is appropriate to seek to provide for compensatory reimbursement to customers.

Under the circumstances, the Court shall exercise its discretion to require the Albans to make a payment or a series of payments - up to $616,203 (the middle of the estimated range of their gross receipts at issue) to fund reimbursement to customers, with jurisdiction retained to adjust the obligation in light of future circumstances.

Therefore, the monetary section of the injunction shall provide that:

- The Albans shall, by July 1, 2014, make an initial payment of $75,000 to a fund managed by the FTC or its designee, and such payments as shall be required by further Order, so that the total payments are no greater than $616,203.

- The FTC, or its designee, shall manage the fund and repay Defendants' customers to the extent that the customers can be located and provide statements, under oath, supporting their entitlement to repayment.

- At such time, if any, that the reimbursements to customers reduce the fund to less than $10,000, the Court shall, absent a showing of good cause not to do so, require an additional payment from the Albans in an amount to be determined in light of then existing circumstances.

- If, by a date that is two years after the making of the initial payment or, if later, any subsequent payment, the fund has not been reduced below $10,000, the fund (and payments hereunder) shall be terminated, and the

remaining balance in the fund shall be paid to the FTC or such recipient(s) as the FTC may designate.

- CONCLUSION

For the foregoing reasons:

1. The Court shall grant Plaintiff injunctive relief, including prohibition against certain conduct and a monetary obligation as discussed herein.

2. The Court shall issue the Injunction herewith.

SO ORDERED, on Monday, March 24, 2014.

/s/
Marvin J. Garbis
United States District Judge
